**No. 25-11347-B**

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

**COALITION FOR GOOD GOVERNANCE, *et al.***

*Plaintiffs-Appellants,*
*vs.*

**SECRETARY OF STATE FOR THE STATE OF GEORGIA, *et al.,***

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:21-cv-02070-JPB

_____

**APPELLANTS' OPENING BRIEF**

July 11, 2025

Bruce P. Brown
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd.
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Counsel for Appellants*

# U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT (CIP)

Coalition for Good Governance, et al.    *vs.* Secretary of State, et al._____ Appeal No. 25-11347-B_____

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. *(Please type or print legibly)*:

PLEASE SEE ATTACHED EXHIBIT A

Submitted by:

Signature: _____

Name: Bruce P. Brown_____ Prisoner # (if applicable): _____

Address: Bruce P. Brown Law LLC, 1123 Zonolite Road, Suite 6, Atlanta GA 30306

Telephone #: (404) 386-6856

Rev.: 2/23

## EXHIBIT A TO CERTIFICATE OF INTERESTED PERSONS SUBMITTED BY APPELLANTS

APPEAL NO: 25-11347-B

Coalition for Good Governance, et al. v. Secretary of State, et al.

Begakis, Steven C.
Boulee, J. P., Judge
Brown, Bruce Perrin
Bruce P. Brown Law LLC
Carver, William Bradley
Clark Hill PLC
Coalition for Good Governance
Consvoy McCarthy PLLC
Dufort, Jeanne
Friedman, Bradley
Georgia Advancing Progress Political Action Committee
Georgia Republican Party, Inc.
Ghazal, Sara Tindall
Giacoma Roberts & Daughdrill LLC
Graham, Ryan
Green, Tyler R.
Hall Booth Smith P.C.
Hall, John E.
Ichter Davis LLC
Ichter, Cary
Jackson County Democratic Committee
Johnston, Janice
Kemp, Brian
Lang, Antwan
Lindsey, Edward
Martin, Rhonda
Mashburn, Matthew
McNichols, Judy
Nakamura, Aileen

National Republican Congressional Committee
National Republican Senatorial Committee
Norris, Cameron T.
Pullar, Patricia
Raffensperger, Brad
Republican National Committee
Roberts, Shea
Shirley, Adam
Taylor English Duma LLC
Thomas-Clark, Ernestine
Throop, Elizabeth
Tyson, Bryan P.
White, W. Dowdy

*Coalition for Good Governance, et al. v. Secretary, et al.*
No. 25-11347-B

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26-1, counsel for Appellants certifies that Appellants are individuals and nongovernmental corporations. Appellants that are nongovernmental corporations have no parent corporations or publicly held corporations that own more than 10% of their stock.

/s/Bruce P. Brown
Bruce P. Brown
Counsel for Appellants

**CONTENTS**

I.    JURISDICTIONAL STATEMENT ................................................................ 1

II.   ISSUES PRESENTED FOR REVIEW ........................................................ 2

III.  STATEMENT REGARDING ORAL ARGUMENT .................................. 3

IV.   STATEMENT OF THE CASE ................................................................... 3

    A.    Plaintiffs' Claims ............................................................................. 3

    B.    Relevant Procedural History .......................................................... 7

       1.    Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction ...................................................................... 7

       2.    Order Denying Defendants' Motion to Dismiss ............................... 11

    C.    Rulings Presented for Review ....................................................... 12

V.    SUMMARY OF THE ARGUMENT ......................................................... 13

VI.   ARGUMENT ............................................................................................ 14

    A.    Standard of Review ....................................................................... 14

    B.    Plaintiffs Have Standing to Challenge the Suspension Rules ........... 14

       1.    The District Court's analysis of the threat of injury is wrong as a matter of law. ...................................................................................... 15

       2.    There Exists a Credible Threat of Enforcement ............................ 17

    C.    Plaintiffs Have Standing to Challenge the Observation, Communications, Tally, and Photography Rules ......................................... 23

       1.    Fact that nonparty district attorneys may also enforce Election Rules irrelevant to redressability analysis. ............................................. 23

i

2.　Plaintiffs' claims against the SEB will be fully redressable by an injunction against the SEB. ...................................................................... 28

VII.　CONCLUSION .................................................................................... 33

## TABLE OF AUTHORITIES

### Cases

*281 Care Comm. v. Arneson*, 638 F.3d 621 (8th Cir. 2011) ............................ 29

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979............................................. 16, 21

*Brooklyn Branch of NAACP v. Kosinski*, 2023 WL 22185901 (S.D.N.Y. Feb. 23, 2023)........................................................................................................ 21

*Clapper v. Amnesty International USA,* 568 U.S. 398 (2013) .......................... 9

*Coalition for Good Governance v. Kemp*, 558 F. Supp. 3d 1370 (N.D. Ga. 2021) ......................................................................................................... 8, 9

*Dream Defs. v. Governor of Fla.*, 57 F.4th 879 (11th Cir. 2023)...................... 29

*Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006) ................................ 14

*Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250 (11th Cir. 2012) ........................................................................... 20, 22

*Larson v. Valente,* 456 U.S. 228 (1982)........................................................... 27

*Luckey v. Harris,* 860 F.2d 1012, 1015 (11th Cir. 2010)................................. 10

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ................................................... 26

*Matsumoto v. Labrador,* 122 F.4th 787 (9th Cir. 2024)............................ 14, 24

*Pernell v. Fla. Bd. of Governors,* 2022 WL 16985720, at *22 (N.D. Fla. Nov. 17, 2022)........................................................................................................ 18

*Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1221 (11th Cir. 2025).............. 17

*Purcell v. Gonzalez,* 549 U.S. 1 (2006) ............................................................. 7

*Susan V. Anthony List v. Driehaus,* 573 U.S. 149 (2014) ........ 13, 15, 18, 19, 20

*Trump v. Wis. Elections Comm'n,* 983 F.3d 919 (7th Cir. 2020) ..................... 27

*United States v. Brown*, 996 F.3d 1171, 1182 (11th Cir. 2021) ........................ 14

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ....................... 14, 24, 32

*Wollschlaeger v. Governor*, 848 F.3d 1293 (11th Cir. 2017) ........................ 8, 18

## Statutes

28 U.S.C. § 1291 ................................................................................................ 1

28 U.S.C. § 1331 ................................................................................................ 1

42 U.S.C. § 1983 ........................................................................................... 1, 3

52 U.S.C. § 10307 ............................................................................................. 6

O.C.G.A. § 21-2-33.1 .................................................................................... 5, 29

O.C.G.A. § 21-2-33.2 ...................................................................................... 21

O.C.G.A. § 21-2-386(a)(2)(A) & (B)(vii) ................................................................ 6

O.C.G.A. § 21-2-386(a)(2)(B)(vii) ....................................................................... 6

O.C.G.A. § 21-2-568.1 ...................................................................................... 5

O.C.G.A. § 21-2-568.2 (2)(B) ............................................................................. 7

## Treatises

15 MOORE'S FEDERAL PRACTICE – CIVIL § 101.42 (2025) ........................... 13, 24

## I.    JURISDICTIONAL STATEMENT

Appellants, plaintiffs below ("Plaintiffs"), brought this action in the United States District Court for the Northern District of Georgia pursuant to 42 U.S.C. § 1983.  The District Court had subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331.

On March 18, 2025, the District Court entered an order granting the motion for summary judgment of the Appellees, defendants below, and dismissing all of Plaintiffs' claims.  (Doc. 162[1]).   The District Court's order is a final decision, and this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Plaintiffs timely filed a notice of appeal on April 17, 2025. (Doc. 165). On May 22, 2025, the Clerk granted Plaintiffs an over-the-phone extension, extending the deadline for the filing of their Opening Brief until June 26, 2025.  On June 26, 2025, the Court granted Plaintiffs' Second Unopposed Motion to Extend Deadline for Filing Opening Brief, extending the deadline to July 11, 2025.  (CA 11 Doc. 20).

---

[1] Citations to the record below will be to the District Court's docket number - "(Doc. #)."  Citations to the record in this appeal with be to the Court of Appeals' docket number - "(CA11 Doc. #)."

1

## II.    ISSUES PRESENTED FOR REVIEW

The District Court granted Appellees' motion for summary judgment, holding that Plaintiffs did not have standing under Article III of the U.S. Constitution to challenge the constitutionality of the State of Georgia's "Suspension Rules" (in Counts I, II, and III) or the "Election Rules" (in Count IV through XI).

As to Counts I, II and III, challenging the Suspension Rules, the District Court held that Plaintiffs lacked standing because Plaintiffs failed to show that any injury that could result from the Suspension Rules "is certainly impending."  (Doc. 162 at 17).  As to this ruling, the issue presented is whether the District Court misapplied the test for pre-enforcement challenges to allegedly unconstitutional laws, that is, whether the plaintiff has a credible fear that the challenged law will be enforced.

As to the Plaintiffs' Counts IV through XI challenging the Observation, Communications, Tally, and Photography Rules (collectively, the "Election Rules"), the District Court held that Plaintiffs had failed to show that their claims against the State Election Board defendants (collectively "the SEB") were redressable because, if even the Court enjoined the SEB, Plaintiffs could still be criminally prosecuted for the allegedly unconstitutional provisions by county district attorneys, who had not been joined as defendants.  (Doc. 162

2

at 19 – 27).  As to this ruling, the issue is where, as here, the plaintiffs have joined as defendants state officials who have the authority to enforce the allegedly unconstitutional laws, is standing defeated by the failure to also join other state officials, such as 159 county district attorneys, who also have the authority to do so?

## III.  STATEMENT REGARDING ORAL ARGUMENT

Oral argument may assist the Court in resolving the issues in this appeal.  This appeal concerns issues of Article III standing in the context of Section 1983 cases against state officials.  Argument may assist the Court in fashioning a ruling that is helpful to district courts going forward, particularly in consideration of pre-enforcement challenges to allegedly unconstitutional laws and the proper application of the "redressability" requirement in cases in which more than one state official has the authority to enforce the challenged state law.

## IV.  STATEMENT OF THE CASE

### A.  Plaintiffs' Claims

Plaintiffs include three non-profit organizations, county election board members, members of political parties, voters, election volunteers, advocates, and journalists.  On May 17, 2021, Plaintiffs filed this lawsuit under 42 U.S.C. § 1983 seeking injunctive and declaratory relief with respect to certain

provisions of Georgia Senate Bill 202 ("SB 202"), a comprehensive bill governing election processes in Georgia signed into law by Governor Kemp on March 25, 2021.  Named as defendants were Secretary of State Raffensperger and the individual members of the State Election Board ("SEB").   Plaintiffs filed an Amended Complaint on June 11, 2021, adding Governor Kemp as a defendant (Doc. 14), and a Second Amended Complaint on April 22, 2023 (Doc. 104).  References in this Brief to the "Complaint" are to the Second Amended Complaint.

For purposes of this appeal, the challenged provisions of SB 202 may be grouped into the "Suspension Rules" and the "Election Rules."  The "Suspension Rules" are the provisions of SB 202 that allow the SEB to remove county boards of elections in their entirety and to take complete control of county election management by appointing an individual superintendent selected by the SEB.  Plaintiffs challenged these "Suspension Rules[2]" in Count I because they violate the Plaintiff Board Members'

---

[2] In their Complaint and Amended Complaint, Plaintiffs referred to the Suspension Rules as the "Takeover Provisions."  The names of these provisions, and the Election Rules, were changed to match the names assigned to the provisions by the District Court.

procedural due process rights under the Fourteenth Amendment; in Count II because they violate the Separation of Powers Clause of the Georgia Constitution and the Georgia Constitution's requirement that the General Assembly provide by law for the registration of voters, and hence constitute a violation of the Due Process Clause of the Fourteenth Amendment; and, in Count III, because they constitute a burden on voting that is not justified by any sufficiently weighty government interest in violation of the Due Process Clause of the Fourteenth Amendment.

The Election Rules are four separate provisions of SB 202 regulating and criminalizing conduct by citizens relating to elections: the Observation, Communications, Tally, and Photography Rules.  Like the Suspension Rules, the Election Rules are enforced in civil proceedings by the State Election Board or referred to the Attorney General for further civil or criminal investigation and potential prosecution. O.C.G.A. § 21-2-33.1.

1.    The Observation Rule, O.C.G.A. § 21-2-568.1, makes it a felony to "intentionally observe an elector while casting a ballot in a manner that would allow such person to see for whom or what the elector is voting."  The fundamental problem with the Observation Rule is that, in Georgia, in-person voting requires the selection of candidates on giant touch screens that make it almost impossible for other voters, credentialed poll watchers, or poll

5

workers to *not* "see for whom or what an elector is voting" or to ever show that such observation was not intentional.  In Count IV, Plaintiffs alleged that the Observation Rule violates the Due Process Clause of the Fourteenth Amendment because it is void for vagueness.  In Count V, Plaintiffs alleged that the Observation Rules constitutes a burden on voting that is not justified by any sufficiently weighty government interest.  In Count IV, Plaintiffs alleged that the Observation Rule constitutes unlawful intimidation in violation of 52 U.S.C. § 10307.

2.      The Communications Rule, O.C.G.A. § 21-2-386(a)(2)(B)(vii), makes it a misdemeanor for "monitors and observers" to communicate, among other things, "any information that they see while monitoring the processing and scanning of absentee ballots."  In Count VII, Plaintiffs – many of whom are frequent election "monitors and observers" – allege that the Communications Rule violates the First Amendment by regulating and criminalizing constitutionally protected speech.

3.      The Tally Rules, O.C.G.A. § 21-2-386(a)(2)(A) & (B)(vii), make it a misdemeanor for "monitors and observers" to, among other things, tally, tabulate, estimate or attempt to tally, tabulate, or estimate any votes on the absentee ballots cast.  In Count VIII, Plaintiffs alleges that the Tally Rules violate the Due Process Clause of the Fourteenth Amendment because they

6

are void for vagueness.  In Count XI, Plaintiffs allege that the Tally Rules violate the First Amendment.

4.    The Photography Rules, O.C.G.A. § 21-2-568.2 (2)(B), make it a misdemeanor to "[p]hotograph or record a voted ballot."  In Count IX, Plaintiffs allege that the Photography Rule violates the First Amendment because it regulates and criminalizes constitutionally protected speech.  In Count X, Plaintiffs allege that the Photography Rule violates the Due Process Clause of the Fourteenth Amendment as void for vagueness.

## B.    Relevant Procedural History

The District Court addressed the Plaintiffs' standing in three orders below, ruling in two orders that the Plaintiffs had standing and then, in the order that is appealed, that Plaintiffs lacked standing:

1.    Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction

On June 14, 2021, Plaintiffs filed a Motion for Preliminary Injunction, seeking to enjoin the enforcement of the Election Rules in the then-upcoming elections.  (Doc. 15).  The District Court initially entered an order denying the motion as to the July 2021 run-off elections, finding that injunctive relief between the general election and the run-offs would violate *Purcell v. Gonzalez,* 549 U.S. 1 (2006) (Doc. 37 at 9).  Given the Court's *Purcell* ruling,

7

the Court did not address standing but noted that it was an issue to be addressed in subsequent proceedings.  (Doc. 37 at 11 n.3).

On August 20, 2021, after a hearing, the District Court issued a comprehensive decision denying in part and granting in part Plaintiffs' Motion for Preliminary Injunction.  *Coalition for Good Governance v. Kemp,* 558 F. Supp. 3d 1370 (N.D. Ga. 2021) (Doc. 49).  In the Order, the District Court addressed at length Plaintiffs standing as to the Election Rules.  (The Court did not address standing as to the Suspension Rules because Plaintiffs did not move to preliminarily enjoin the Suspension Rules).   The Court first rejected Appellees argument that Plaintiffs lacked an Article III "actual injury" because the Election Rules had not yet been enforced against them. Instead, the Court ruled, "courts allow a plaintiff to bring a pre-enforcement suit 'when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there is a credible fear of prosecution.'" 558 F. Supp. 3d at 1379 (quoting *Wollschlaeger v. Governor,* 848 F.3d 1293, 1304 (11th Cir. 2017)).  The Court found that Plaintiffs met this test by presenting evidence that SB 202 was already changing their conduct because of "self-censorship" and "forgoing participation in the election process."  The District Court stated:

> Here, the record shows that individual plaintiffs have changed or intend to change their behavior in response to SB 202. For

8

example, Plaintiff Jeanne Dufort, a poll watcher, member of the Vote Review Panel of Morgan County and vocal critic of Georgia's election system, testified that she will not vote in person and may not serve as a poll watcher in future elections to avoid the possibility of prosecution under the Observation Rule. Dufort Decl. ¶¶ 21-22, ECF No. 15-4. Plaintiff Bradley Friedman, host of a nationally syndicated radio show that addresses election security, testified that SB 202's restrictions will limit his show's news reporting activities for upcoming elections. Friedman Decl. ¶ 8, ECF No. 15-5. As such, the alleged injury—self-censorship or forgoing participation in the election process—may have already occurred for those plaintiffs who indicated that they would change their behavior with respect to the July 13, 2021 runoff elections.

558 F.Supp. 3d at 1379. As to their "credible fear of prosecution," the District

Court found:

With respect to the threat of prosecution under the challenged provisions, Plaintiffs submitted evidence of pending complaints against poll watchers for election monitoring activities that allegedly violated an election statute not at issue here. Marks Decl. ¶ 11, ECF No. 15-3. Notably, State Defendants did not refute—either in their papers or during oral argument—Plaintiffs' contention that any alleged violations of SB 202 will be "vigorously" prosecuted. Pls.' Reply Br. 5, ECF No. 23. Therefore, Plaintiffs have demonstrated a credible threat of prosecution.

*Id.,* 558 F. Supp. 3d at 1380. The District Court also rejected the Defendants'

argument that Plaintiffs' injuries were too speculative under *Clapper v.*

*Amnesty International USA,* 568 U.S. 398 (2013), stating: "Unlike here, the

plaintiffs in *Clapper* lacked knowledge of the government's enforcement

practices and failed to provide a credible basis for fear of prosecution." 558 F.

Supp. at 1380.

9

After finding that Plaintiffs had presented sufficient evidence of actual Article III injury, the District Court turned to the issue of whether the injuries were traceable to the Defendants and were redressable by the Court. Citing *Luckey v. Harris,* 860 F.2d 1012, 1015 (11th Cir. 2010), the District Court held that because the Governor of Georgia is "generally responsible for enforcing the state's laws," injuries caused by SB 202 were traceable to the Governor and redressable by an order prohibiting the Governor from enforcing them. As to Defendant SEB, the District Court stated: "State Defendants' concede that they have 'authority with respect to civil enforcement proceedings regarding the Observation, Communication, Photography, and Tally Rules." 558 F. Supp. 3d at 1382 n. 5.

On the merits, the District Court denied Plaintiffs' Motion as to the Observation, Communications, and Tally Rules, but granted Plaintiffs' Motion as to the "Photography Rule 2", the label the District Court gave to the section of the Photography Rule that prohibited "any photography or recording of any voted ballot in public and nonpublic forums alike." The District Court ruled that Plaintiffs were substantially likely to succeed on the merits of their claim that Photography Rule 2, a content-based regulation of protected speech, was not narrowly tailored to meet any compelling state

10

interest.  558 F.Supp.3d at 1386.  The District Court accordingly enjoined the Defendants from enforcing Photography Rule 2. 558 F.Supp.3d at 1386.

> 2.      Order Denying Defendants' Motion to Dismiss

Meanwhile, as Plaintiffs' Motion for Preliminary Injunction was pending, Defendants and the Intervenor Defendants filed Motions to Dismiss. (Doc. 41, 42).  On December 9, 2021, the District Court entered an order denying the Motions to Dismiss.  (Doc. 50).

As to the issue of standing as to the Election Rules, the District Court substantially repeated the analysis and findings of the Order on Motion for Preliminary Injunction, holding that Plaintiffs had alleged, and presented sufficient evidence of, a credible fear of prosecution of the Election Rules.  As to the Suspension Rules, which had not been addressed in the Order on Motion for Preliminary Injunction, the Court cited evidence that the SEB "has begun proceedings under the Suspension Rule against the Fulton County Board of Registration."  (Doc. 50 at 10).  As to the credibility of the threat of enforcement of all the challenged rules, the District Court stated: "Notably, State Defendants do not refute Plaintiffs' contention that any violation of SB 202 will be 'vigorously' prosecuted."  (Doc. 50 at 9).  Denying the Motions, the District Court concluded: "For all these reasons, the Court

11

finds that the Article III standing requirements to bring suit are met." (Doc. 50 at 15).

In the Order Denying Motions to Dismiss, the District Court did not address the traceability and redressability prongs of standing because the Defendants did not raise the issue in their Motions.  (Doc. 50 at 6 n. 6).

## C.    Rulings Presented for Review

On March 18, 2025, the District Court granted Defendants' Motions for Summary Judgment on standing.  (Doc. 162).  As to the Suspension Rules, the District Court held that the possibility that a local election board member will be suspended was too remote to support standing and Plaintiffs failed to show that any injury that could result from the Suspension Rule "is certainly impending."  (Doc. 162 at 17).   As to the Election Rules, the District Court held that Plaintiffs had not established redressability with respect to their claims against the SEB because, even if Plaintiffs prevailed against the named defendants, local state county prosecutors, who were not named as defendants, could still enforce the Election Rules against them.

The District Court also held that the Plaintiffs had failed to establish traceability or redressability with respect to its Election Rules claims against the Governor.  Plaintiffs do not appeal the granting of summary judgment on their Election Rules claims against the Governor.

12

## V.    SUMMARY OF THE ARGUMENT

As to the Suspension Rules, the District Court's holding that Plaintiffs "are unable to demonstrate that the threat of injury is both real and immediate, not conjectural or hypothetical," (Doc. 162 at 18), is in error because the District Court focuses on the number of events that must occur *after* the procedures for the enforcement of the Suspension Rules are initiated.  The correct analysis is whether the Plaintiffs have a "credible fear" that the challenged provisions will be enforced, not whether the enforcement will ultimately lead to decisive punishment or other regulatory action.  *Susan V. Anthony List v. Driehaus,* 573 U.S. 149 (2014).  Under the factors set forth in *Driehaus* and other decisions, there exists a credible threat of enforcement, particularly since Defendants have never disavowed their intent to enforce the Suspension Rules.

As to the Election Rules, the District Court holding Plaintiffs' claims against the SEB failed for lack of redressability because, even if relief against the SEB were granted, county district attorneys could still enforce the law is in error.  For a challenge to the enforcement of a state law to be redressable, there is no requirement that the plaintiff name as defendants every state or local official that might possibly enforce it.  15 MOORE'S FEDERAL PRACTICE – CIVIL § 101.42 (2025) (injunction against one of several governmental

13

authorities with enforcement power sufficient to establish redressability);

*Matsumoto v. Labrador,* 122 F.4th 787, 801-02 (9th Cir. 2024) (same); *see also*

*Whole Woman's Health v. Jackson,* 595 U.S. 30, 47-48 (2021).  In this case,

because Defendant SEB is the state authority with authority to enforce the

Election Rules, an injunction prohibiting the SEB from doing so would

redress Plaintiffs' claims.

## VI.    ARGUMENT

### A.    Standard of Review

Questions of Plaintiffs' Article III standing are reviewed de novo.

*Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006).  For underlying

evidentiary matters related to standing, "Clear error exists if after reviewing

the entire record, we are 'left with the definite and firm conviction that a

mistake has been committed.'" *United States v. Brown*, 996 F.3d 1171, 1182

(11th Cir. 2021) (citations omitted).

### B.    Plaintiffs Have Standing to Challenge the Suspension Rules

As to the challenges to the Suspension Rules, the District Court held

that Plaintiffs "are unable to demonstrate that the threat of injury is both

real and immediate, not conjectural or hypothetical."  (Doc. 162 at 18).  In

support of this holding, the Court found that "numerous events must occur

before either a local election official or board of registrars is suspended,"

14

(Doc. 162 at 15) and that since the enactment of SB 202 in 2021, "no election official from any county had been suspended." This holding is in error in multiple respects.

> 1.    The District Court's analysis of the threat of injury is wrong as a matter of law.

The District Court held that the number of steps that must be taken between the initiation of suspension proceedings and a final decision suspending a county board of elections renders the Board Members Plaintiffs' threatened injury too remote to give them standing.   Even if the Court had correctly described these processes (which it did not), its standing analysis would still be fundamentally incorrect.   For purposes of determining whether the plaintiff has standing in a pre-enforcement challenge, the issue is whether there is a "credible threat" that enforcement proceedings will be initiated, not whether those proceedings will result in an actual conviction or a final administrative decision.   The steps that the government may or must take after it initiates enforcement proceedings against the plaintiff – that is, *after* the plaintiff has already suffered actual injury – are irrelevant in determining whether the actual injury that enforcement causes is sufficiently imminent to confer standing.

The leading case on pre-enforcement challenges, *Susan V. Anthony List v. Driehaus,* 573 U.S. 149 (2014), is directly on point.  In *Driehaus,* the

15

plaintiffs challenged an Ohio law that allowed "any person" to file a petition with the Ohio Election Commission alleging that a political candidate made false statements in a campaign.  Like the District Court in this case, the Supreme Court in *Driehaus* described the lengthy administrative proceedings that would follow the filing of such a petition: referral to a panel of the Commission; an expedited hearing before the panel to determine probable cause; a full hearing before the Commission; the subpoenaing of witnesses; and finally the decision by the Commission, if warranted, to issue a reprimand or to refer the matter to the local county prosecutor.  527 U.S. at 153.

In determining whether plaintiffs had standing to challenge the law, however, the Supreme Court in *Driehaus* ignored completely the multiple administrative steps *following* the initiation of a complaint and focused exclusively on the credibility of plaintiffs' fear that the proceedings would be initiated in the first place. The issue, according to the Court, was whether there "'exists a credible threat of enforcement.'" 573 U.S. at 159 (quoting *Babbitt v. Farm Workers,* 442 U.S. 289 (1979).  The Court then discussed at length the factors relevant to the determination of whether the threat *of enforcement* was "credible," finding that plaintiffs had alleged a credible

16

threat sufficiently to confer standing. (Plaintiffs discuss these factors in Section 2, below).

The Board Member Plaintiffs will suffer actual, concrete injury upon *the initiation* of suspension proceedings. Like the plaintiffs in *Driehaus,* Board Member Plaintiffs "may be forced to divert significant time and resources to hire legal counsel and respond to discovery requests." 573 U.S. at 165. The threat of this injury, easily sufficient to constitute "actual injury" for purposes of standing, is not dependent upon the number of steps that the SEB must take before a board member is actually suspended. Those procedures are highly relevant to Plaintiffs claims on the merits – particularly their procedural due process challenge (Count One) – but, as a matter of law, are unrelated to the standing inquiry. "We've stressed repeatedly that 'standing in no way depends on the merits of the plaintiff's' claims." *Polelle v. Fla. Sec'y of State,* 131 F.4th 1201, 1221 (11th Cir. 2025).

2.    There Exists a Credible Threat of Enforcement

The correct standing analysis does not focus on the chain of events that must occur after the initiation of proceedings and before ultimate suspension of a board member, as the District Court held, but whether there exists a "credible threat" of enforcement in the first place. The leading cases are *Driehaus* and this Court's en banc decision in *Wollschlaeger v. Governor,* 848

17

F. 3d 1293 (11th Cir. 2017). As Justice Thomas wrote in *Driehaus,* "[n]othing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Driehaus,* 573 U.S. at 163. Instead, standing is satisfied if the plaintiff alleges the desire to engage in an activity that will place the plaintiff at a "credible threat of prosecution." *Wollschlaeger,* 848 F. 3d at 1304 (internal quotations and citation omitted). By being members of election board subject to the SEB's suspension authority, the Board Member Plaintiffs engage in the activity that places them at a threat of injury as a result of the enforcement of the laws. As to the credibility of the threat, the cases enumerate a number of factors, all weighing in favor of the conclusion that the Board Member Plaintiffs have standing.

   a. *State Defendants have not disavowed intent to enforce.*

Defendants have never denied that "any alleged violation of SB 202 will be 'vigorously' prosecuted," as the District Court found in its Order on Motions to Dismiss. (Doc. No. 78 at 9). The Defendants' promise to enforce the challenged statute alone defeats any argument that the threat of enforcement is not "credible." *See Pernell v. Fla. Bd. of Governors,* 2022 WL 16985720, at *22 (N.D. Fla. Nov. 17, 2022) (finding credible threat of prosecution where defendant stated that it intended to enforce the challenged

18

law, stating "this Court is inclined to believe that the Board means what it says."). *See also Driehaus,* 573 U.S. at 165 (holding that plaintiffs faced credible threat because, among other reasons, defendants "have not disavowed enforcement").

> b. *Enforcement can be triggered even if Board Members violate no rule.*

One of the key features of SB 202 the increases the risk of enforcement is that the suspension proceedings are enforced against the county election "superintendent," which is defined as the entire county board of elections. Thus, an individual board member may be subject to the enforcement of the suspension rules even if the board member individually was not aware of the wrongdoing, or did not engage in any wrongdoing and, in fact, opposed collective action by the board that was unlawful. In fact, the wrongdoing could have occurred prior to the time of service of the individual board member. Since an individual board member can be the subject of enforcement proceedings based on the wrongdoing of other board members, or the entire board, the risk of enforcement is multiplied.

> c. *Relatively minor infractions can trigger suspension proceedings*

Relatively minor violations of Georgia's election laws in two consecutive election cycles may trigger suspension. For example, three violations of the following rules could trigger suspension of the entire board:

19

*failure to print an individual badge for each poll watcher, Rule 183-1-13-.04;

*failure to swear in voting system programmers. Rule 183-1-12-.17;

* failure to conduct an hourly sweep of each voting station to find any unauthorized materials left behind. Rule 183-1-12-.11(3));

*allowing equipment storage room exceeded 80% humidity on rainy day. Rule 183-1-12-.04(2).

*See Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1259 (11th Cir. 2012) (credibility of threat increased because defendants confirmed "that any minor traffic violation such as failure to use a turn signal or failure to come to a complete stop can provide the requisite probable cause to trigger application" of challenged law).

   d. *Past enforcement of SB 202*

   Though the SEB has not suspended any superintendent, it has initiated extensive proceedings  lasting months against the Fulton County Board of Elections and Registration under the Suspension Rules that culminated in a negotiated settlement, but easily could have led to the suspension of the entire board and appointment by the SEB of its own superintendent.  (Doc. 123-3).  *See Driehaus,* 573 U.S. at 164 (past

20

enforcement "is good evidence that the threat of enforcement is not 'chimerical'") (citations omitted).

The fact that the SEB has not actually suspended any county election board is not a barrier to standing. In *Babbitt v. Farm Workers*, 442 U.S. 289 (1979), the Court found that the plaintiffs had standing to challenge a criminal provision that "ha[d] not yet been applied and may never be applied to commissions of unfair labor practices." *Id.* at 302. Because "the State ha[d] not disavowed any intention of invoking the criminal penalty provision," the Court reasoned, the plaintiffs' fear of prosecution was "not without some reason[.]" *Id. See also Brooklyn Branch of NAACP v. Kosinski,* 2023 WL 22185901 (S.D.N.Y. Feb. 23, 2023) (relying on *Babbitt,* holding that "although it is not certain that Plaintiff or its members will be prosecuted for violating the Line Warming Ban, Plaintiff has established a credible threat of such enforcement").

In its decision, the District Court also noted that the Suspension Rules contemplate that the SEB "shall promulgate rules and regulations for conducting such preliminary investigation and preliminary hearing." O.C.G.A. § 21-2-33.2. To date, the SEB has yet to promulgate such rules. The District Court stated: "In the Court's view, the lack of regulation underscores the speculative nature of the claims." (Doc. 162 at 18). The lack

21

of rules, however, did not stop the SEB from initiating the proceedings against the Fulton County Board of Elections and Registration, referenced above.  In addition, in this litigation, Defendants have refused to commit to not enforce the Suspension Rules prior to the promulgation of regulations, despite the explicit opportunity to do so in response to Plaintiffs' Motion to Stay. (Doc. 147, 149, 151).  The Defendants' position is this: it is premature for Plaintiffs to challenge the Suspension Rules, but not premature for the Defendants to enforce them.

### e. *Proceedings can be initiated by any number of individuals.*

The credibility of the threat is bolstered by the fact that suspension proceedings may be initiated by any number of individuals or political organizations, including a stated minimum number of the jurisdiction's state legislative delegation, the "governing authority of the county," or the SEB "on its own motion."   O.C.G.A. § 21-2-33.2(a).  *See Driehaus,* 573 U.S. at 164 ("The credibility of that threat is bolstered by the fact that authority to file a complaint with the Commission is not limited to a prosecutor or an agency.").

In sum, the Board Member Plaintiffs have satisfied the injury requirement by "establishing a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement."  *Georgia Latino Alliance,* 691 F.3d at 1257-58.

22

### C.    Plaintiffs Have Standing to Challenge the Observation, Communications, Tally, and Photography Rules

As to Counts Four through Eleven, challenging the Observation, Communications, Tally, and Photography Rules, the District Court held that Appellants lacked standing because their injuries were not traceable to the actions of the Defendants or redressable by an injunction against them.   In Section 1, Plaintiffs will show that the District Court erred by holding that an injunction against the named defendants would not redress Plaintiffs' injuries because nonparties, specifically 159 state county attorney generals, could still criminally prosecute Plaintiffs for violation of the Election Laws. In Section 2, Plaintiffs will show that Plaintiffs' threatened injuries are traceable to the SEB and an order enjoining the SEB from enforcing the Election Rules would clearly redress Plaintiffs' claims against the SEB.

> 1.    Fact that nonparty district attorneys may also enforce Election Rules irrelevant to redressability analysis.

The District Court held that Plaintiffs' claims against the SEB failed because of lack of redressability.  Plaintiffs will continue to be harmed in the same manner whether Defendants are enjoined because "every district attorney would still have the authority to bring criminal charges against Plaintiffs." (Doc. 162 at 26).   The District Court concluded: "the Court finds that Plaintiffs have failed to show that an order enjoining Defendants would

23

significantly increase the likelihood that they would not be injured." (Doc. 162 at 27). This reasoning and holding is in error in multiple respects.

Most fundamentally, the District Court's holding would require plaintiffs challenging a state law to sue every state official capable of enforcing the law. That holding is directly contrary to well-settled law. For a challenge to the enforcement of a state law to be redressable, there is no requirement that the plaintiff name as defendants every state or local official that might possibly enforce it. As the Court held in *Matsumoto,* 122 F.4th at 801-02:

> Where a state statute specifically grants enforcement powers to multiple government authorities, an injunction against the exercise of those powers by any one of those authorities suffices to establish redressability.

*See also* 15 MOORE'S FEDERAL PRACTICE – CIVIL § 101.42 (2025) (injunction against one of several governmental authorities with enforcement power sufficient to establish redressability).

The fact that a plaintiff might have a claim for relief against a nonparty – here, state county attorneys – has no bearing upon whether the plaintiff has stated a redressable claim against the named defendants. That the redressability issue focuses on the named defendants, not nonparties, is illustrated by the Supreme Court's decision in *Whole Woman's Health v. Jackson,* 595 U.S. 30 (2021). In *Whole Woman's Health,* a Texas law, S.B. 8,

24

prohibited abortions after eight weeks but, presumably to evade federal constitutional attack, specifically allowed only private parties to enforce the law in civil suits.   Abortion providers brought a pre-enforcement suit against a judge, a court clerk, the State Attorney General, state licensing officials, and a single private party (a Mr. Dickson).   Mr. Dickson, however, filed a declaration stating that he had no intention of enforcing the law.  The Supreme Court held that the plaintiffs did not have standing to sue Mr. Dickson because they "cannot establish 'personal injury fairly traceable to [Mr. Dickson's] allegedly unlawful conduct.'" 595 U.S. at 48.  The Court also held that the plaintiffs could not sue the judge, the clerk, or the attorney general.  The Court, however, held that the plaintiffs had standing to sue the licensing-official defendants because "provisions of state law . . . appear to impose a duty on the licensing-official defendants to bring disciplinary actions against them if they violate S. B. 8."  595 U.S. at 47-48. The fact that SB 8's primary enforcement mechanism was suits by private parties, and no private parties remained in the case, had no bearing upon whether the plaintiffs had standing to sue the licensing-official defendants.

*Whole Woman's Health* confirms that whether the alleged unconstitutional law may also be enforced by nonparties has absolutely nothing to with whether the plaintiff has standing to sue defendants who do

25

have enforcement authority. Standing requires a justiciable controversy *between the parties* such that the lawsuit presents a case or controversy under Article III. If there is such a controversy, the federal court has jurisdiction regardless of whether the plaintiff *might also* have a justiciable controversy against a nonparty.

The District Court's reasoning misconceives the purpose of the traceability and redressability prong of the Article III standing analysis. The purpose of requiring that injuries be "fairly" traceable or "likely" to be redressed is to maintain "'the tripartite allocation of power set forth in the Constitution.'" *Massachusetts v. EPA,* 549 U.S. 497, 547 (2007) (Roberts, C.J., dissenting). Requiring that Plaintiffs add 159 county state attorneys to a lawsuit that has already joined state officials with the power to enforce the challenged laws has nothing to do with the "tripartite allocation of the power set forth in the Constitution."

Since the redressability requirement addresses whether the controversy is of the type that courts, as opposed to other branches of government, may address, the focus is whether a judicial remedy will address the plaintiffs' injury, not whether it will grant the plaintiff complete relief against the named defendants, much less grant the plaintiff relief against all possible defendants. As the Supreme Court stated in *Larson* v. *Valente*, 456

26

U.S. 228, 244, n. 15 (1982): "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *See also Trump v. Wis. Elections Comm'n,* 983 F.3d 919, 924-25 (7th Cir. 2020) ("the fact that a judicial order cannot provide the full extent or exact type of relief a plaintiff might desire does not render the entire case nonjusticiable").

The District Court's decision, wrong as it is on the law, will also have the unintended consequence of requiring that plaintiffs filing a Section 1983 suit to enjoin the enforcement of any criminal or administrative law join as defendants all 159 state county attorneys and any state agency capable of enforcing the challenged law.  Plaintiffs fully understand that an order from a United States District Court declaring that a state law is unconstitutional and enjoining a state official from enforcing it is not binding on a state county attorney or other state officials who is not a party to the suit.  But this reality still does not make the suit any less a "case or controversy." And requiring the joinder of 159 additional parties is not necessary for the plaintiffs, extremely costly for the 159 county attorneys who would be hailed to appear in Atlanta as defendants, and would waste precious judicial resources for no good reason.

27

2.    Plaintiffs' claims against the SEB will be fully redressable by an injunction against the SEB.

Though the SEB has been the primary defendant in this case since its inception,[3] the District Court relegated its specific discussion of the redressability of Plaintiffs' claims against the SEB to a footnote, stating:

> Plaintiffs additionally argue that the traceability and redressability requirements are satisfied because the SEB can institute civil proceedings which can result in fines and referrals to the Attorney General for criminal prosecution. Even if the SEB can institute civil proceedings, Plaintiffs will continue to be harmed by the threatened enforcement by the district attorneys. Moreover, Plaintiffs failed to present any evidence that the SEB has referred any cases to the Attorney General or levied in any fines. This argument thus fails for the same reasons as the Governor's general enforcement authority argument fails.

(Doc. 162 at 27 n. 12). In addition to its focus on the enforcement power of district attorneys, discussed above, the District Court did not follow the appropriate test, which it correctly restated in its decision:

> Particularly relevant here, "[t]o establish traceability and redressability in a lawsuit seeking to enjoin a government official from enforcing the law, a plaintiff must show 'that the official has the authority to enforce the particular provision [being] challenged, such that [the] injunction prohibiting enforcement would be effectual.'"

---

[3] As originally filed, this case named only the members of the SEB as defendants. (Doc. 1). Plaintiffs later amended their complaint to add Governor Kemp. (Doc. 14).

28

(Doc. 162 at 20 (quoting *Dream Defs. v. Governor of Fla.,* 57 F.4th 879, 888-89 (11th Cir. 2023)).

Applying this test, it is undisputed that the SEB "has the authority to enforce the particular provision [being] challenged." As the District Court stated in the Preliminary Injunction Order: "State Defendants concede that they have 'authority with respect to civil enforcement proceedings' regarding the Observation, Communication, Photography and Tally Rules." *Coalition for Good Governance,* 558 F. Supp. 3d at 1382 n. 5.

The SEB is *the* state agency charged with the responsibility for enforcing each of the Election Rules (and the Suspension Rules) challenged in this case. "When a statute is challenged as unconstitutional, the proper defendants are the officials whose role it is to administer and enforce the statute." *281 Care Comm. v. Arneson,* 638 F.3d 621, 631 (8th Cir. 2011). All of the challenged rules are codified in Chapter 2 of Title 21. which is entitled "Enforcement of Chapter." O.C.G.A. § 21-2-33.1 states that the SEB "is vested with the power to issue orders, after the completion of appropriate proceedings, directing compliance with this chapter or prohibiting the actual or threatened commission of any conduct constituting a violation." The SEB is empowered to issue cease and desist orders, levy fines, issue reprimands, and to refer complaints to the Attorney General to district attorneys for civil

29

or criminal prosecution.  The SEB routinely refers complaints about election law violations to the Attorney General, as reflected by its published meeting agendas[4] and transcripts.[5]

That an order enjoining the SEB would redress Plaintiffs' claimed injuries is further supported by unrebutted record evidence.  In support of the allegations that Plaintiffs faced a "credible fear" of prosecution of the Election Rules, Plaintiffs presented substantial evidence demonstrating that they had credible fear *that the SEB in particular* would enforce the Election Rules against them.   For example, CGG Executive Director Marilyn Marks stated in her declaration:

The Secretary of State and the State Election Board have made

---

[4] Meeting agendas are posted by the SEB at https://sos.ga.gov/page/state-election-board-meetings-events. Examples of regular meeting agendas showing review of complaints against counties and referrals to the Attorney General include the February and May 2025 meetings :
https://sos.ga.gov/sites/default/files/2025-05/seb_Agenda_5_13_25.pdf;
https://sos.ga.gov/sites/default/files/2025-02/seb-agenda_2_25_25.pdf.

[5] Meeting transcripts are posted here: https://sos.ga.gov/page/state-election-board-meetings-events; see pages 139-143.
https://sos.ga.gov/sites/default/files/forms/2022%20Transcripts.pdf.

[5]

exaggerated and baseless allegations against me and CGG Board Member Rhonda Martin in the past for poll watching activities, threatening us with potential prosecution. (Exhibit 2). The complaints against us are still pending. I am fearful that Secretary Raffensperger's investigators will use the opportunity to again allege crimes, this time Elector Observation felonies, on an arbitrary and capricious basis. Therefore, until this threat is mitigated, I will not conduct polling place monitoring, nor will I encourage our volunteers to act as poll watchers.

(Doc. 15-3 at 5, ¶ 11).

CGG as an organization, certain CGG members, and I as an individual have filed numerous formal and informal complaints with and against the Secretary of State and the State Election Board regarding the large touchscreens' violation of ballot secrecy. Such complaints have included litigation currently pending in this district court (Curling v Raffensperger 17cv2989) and a Help America Vote Act (HAVA) complaint. State Defendants are well aware of the ballot secrecy issue and have refused to act to protect in-person voters' rights to a secret ballot.

(Doc. 15-3 at 5, ¶ 12).

In fact, in its December 13, 2022, meeting, the SEB publicly discussed referring Ms. Marks to the Sumter County District Attorney to investigate and potentially prosecute Ms. Marks for an alleged crime.[6] (Nothing came of the referral because the charges were unfounded.)

---

[6] Meeting transcript, See pages 139-143; https://sos.ga.gov/sites/default/files/forms/2022%20Transcripts.pdf.

31

Plaintiff Jeanne Dufort stated in her declaration that she had been an "outspoken critic of Georgia's election system, the Secretary of State, and the State Election Board" and that, therefore, "I believe there is a real risk that I may be charged with a misdemeanor for violating the Gag Rule or a felony for violating the Election Observation Rule, while performing my duty as an involved citizen." (Doc. 15-4 at 6, ¶ 14).

In fact, the District Court, in prior orders, found that the Plaintiffs faced a credible fear of prosecution of the Election Rules, a holding that the Court did not revisit in the Order on appeal. Plaintiffs credibly fear enforcement of the Election Rules by the SEB, the state agency charged with the responsibility to enforce them, and an order enjoining the SEB from doing so plainly will redress the claimed injury. This easily is sufficient to establish the traceability and redressability of their claims against the SEB. *See Whole Woman's Health,* 595 U.S. at 47-48 (plaintiffs had standing to sue licensing-official defendants because "provisions of state law . . . appear to impose a duty on the licensing-official defendants to bring disciplinary actions against them if they violate S. B. 8.").

The District Court's Order granting Defendants' Motion for Summary Judgment on Plaintiffs' Election Rules claims against the SEB on redressability grounds should therefore be reversed.

32

## VII.    CONCLUSION

For the foregoing reasons, the District Court's Order granting

Appellees' Motion for Summary Judgment on the Suspension Rules, and on

the Election Rules as to Defendant SEB should be reversed.

Respectfully submitted this 11th day of July 2025.

/s/Bruce P. Brown
Bruce P. Brown
*Counsel for Appellants*
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Road NE
Atlanta, GA 30306
Phone: (404) 881-0700
bbrown@brucepbrownlaw.com

33

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing Brief for Appellant complies with the type-volume limitation specified in the Federal Rules of Appellate Procedure, in the following respects:

(a)    Exclusive of the exempted portions of the Brief, as provided in Federal Rule of Appellate Procedure 32(f), the Motion contains less than 8,000 words.

(b)    The Brief has been prepared in proportionally spaced typeface, using Microsoft Word in 13-point Century Schoolbook font.

(c)    As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C)(i), the undersigned has relied upon the word count feature of his word processing system in the preparation of this Certificate of Compliance.

This 11th day of July, 2025.

/s/Bruce P. Brown
Bruce P. Brown
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 386-6856

34

## CERTIFICATE OF SERVICE

I hereby certify that I have, this date, filed electronically the foregoing Brief of Appellant with the Clerk of this Court, and have served it upon counsel by filing it with the court's electronic-filing system.

This 11th day of July, 2025

/s/Bruce P. Brown
Bruce P. Brown
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 386-6856

35