**No. 25-11347-B**

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

**COALITION FOR GOOD GOVERNANCE, *et al.***

*Plaintiffs-Appellants,*
*vs.*

**SECRETARY OF STATE FOR THE STATE OF GEORGIA, *et al.*,**

*Defendants-Appellees.*
_____

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:21-cv-02070-JPB

_____

**APPELLANTS' REPLY BRIEF**

October 31, 2025

Bruce P. Brown
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd.
Suite 6
Atlanta, Georgia 30306
(404) 386-6856

*Counsel for Appellants*

# U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT (CIP)

Coalition for Good Governance, et al.  *vs.* Secretary of State, et al._____ Appeal No. 25-11347-B _____

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. *(Please type or print legibly)*:

PLEASE SEE ATTACHED EXHIBIT A

Submitted by:

Signature: _____

Name: Bruce P. Brown _____ Prisoner # (if applicable): _____

Address: Bruce P. Brown Law LLC, 1123 Zonolite Road, Suite 6, Atlanta GA 30306

Telephone #: (404) 386-6856

**EXHIBIT A TO CERTIFICATE OF INTERESTED PERSONS SUBMITTED BY APPELLANTS**

APPEAL NO: 25-11347-B

Coalition for Good Governance, et al. v. Secretary of State, et al.

Begakis, Steven C.
Boulee, J. P., Judge
Brown, Bruce Perrin
Bruce P. Brown Law LLC
Carver, William Bradley
Clark Hill PLC
Coalition for Good Governance
Consvoy McCarthy PLLC
Dufort, Jeanne
Friedman, Bradley
Georgia Advancing Progress Political Action Committee
Georgia Republican Party, Inc.
Ghazal, Sara Tindall
Giacoma Roberts & Daughdrill LLC
Graham, Ryan
Green, Tyler R.
Hall Booth Smith P.C.
Hall, John E.
Ichter Davis LLC
Ichter, Cary
Jackson County Democratic Committee
Johnston, Janice
Kemp, Brian
Lang, Antwan
Lindsey, Edward
Martin, Rhonda
Mashburn, Matthew
McNichols, Judy
Nakamura, Aileen

National Republican Congressional Committee
National Republican Senatorial Committee
Norris, Cameron T.
Pullar, Patricia
Raffensperger, Brad
Republican National Committee
Roberts, Shea
Shirley, Adam
Taylor English Duma LLC
Thomas-Clark, Ernestine
Throop, Elizabeth
Tyson, Bryan P.
White, W. Dowdy

# TABLE OF CONTENTS

I.    SUPPLEMENTAL STATEMENT ON ORAL ARGUMENT....................1

II.   REPLY .................................................................................................3

      A.    Plaintiffs Having Standing to Challenge the Suspension
            Rules ...................................................................................... 3

      B.    Plaintiffs Have Standing to Challenge the Observation,
            Communications, Tally, and Photography Rules.......................... 11

            1.    Plaintiffs' Injuries are Traceable and Redressable................ 11

            2.    Plaintiffs' Injuries Not Speculative ....................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011)...... 18

*Clapper v. Amnesty International USA,* 568 U.S. 398 (2013) ........................ 16

*Coalition for Good Governance v. Kemp,*
  558 F. Supp. 3d 1370 (N.D. Ga. 2021) ................................................ 15, 16

*Georgia Latino Alliance for Human Rights v. Governor of Georgia,* 691 F.3d
  1250 (11th Cir. 2012) ...................................................................... 8

*Larson* v. *Valente*, 456 U.S. 228 (1982)............................................... 13

*Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000) ................................... 19

*Matsumoto v. Labrador,* 122 F.4th 787 (9th Cir. 2024) ................................... 13

*O'Shea v. Littleton,* 414 U.S. 488 (1974)............................................... 8

*PDVSA US Litig. Tr. v. LukOil Pan Americas LLC,* 65 F.4th 556, 562 (11th
  Cir. 2023) ...................................................................................... 15

*Polelle v. Fla. Sec'y of State,* 131 F.4th 1201, 1221 (11th Cir. 2025) ................... 4

*Susan V. Anthony List v. Driehaus,* 573 U.S. 149 (2014) ................................ 3

*Trump v. Wis. Elections Comm'n,* 983 F.3d 919 (7th Cir. 2020) ..................... 13

*United States v. Brown,* 996 F.3d 1171, 1182 (11th Cir. 2021)....................... 18

*Whole Woman's Health v. Jackson,* 595 U.S. 30 (2021) ................................ 12

*Wollschlaeger v. Governor,* 848 F.3d 1293 (11th Cir. 2017)............................. 16

**Statutes**

O.C.G.A § 21-2-33.2(b) ............................................................ 2, 9

O.C.G.A. § 21-2-2 (35) ............................................................ 5

O.C.G.A. § 21-2-105 ............................................................ 5

O.C.G.A. § 21-2-33.2 ............................................................ 5

O.C.G.A. § 21-2-33.2(f) ............................................................ 6
**Treatises**

15 MOORE'S FEDERAL PRACTICE – CIVIL § 101.42 (2025) ............................ 12, 13

## I. Supplemental Statement on Oral Argument

The statements and arguments in Defendants' Brief increase the need for oral argument in this case for two specific reasons. First, Defendants completely misread the challenged Suspension Rules and, as a result, their arguments on standing do not apply to, or align with, the actual legislation. As explained in greater detail below, the faulty premise of Defendants' standing argument is that the Suspension Rules condition removal of an individual board member upon that individual board member's violation of election laws and give individual board members procedural protections. That is entirely incorrect. The Suspension Rules do *not* limit or condition removal of an individual board member upon the board member's violation of law and do not provide an individual board member with any due process. Since standing in pre-enforcement challenges to allegedly unconstitutional laws depends, in part, upon how, and against whom, the laws will be enforced, this mistake renders Appellees' entire argument wildly misplaced. Oral argument is necessary so that the Court can have the benefit of Defendants' standing argument as applied to the actual legislation (and not their current mistaken interpretation of it) and so that Plaintiffs may respond thereto.

1

Second, oral argument is necessary to determine whether the Defendants intend to enforce the Suspension Rules before Defendant State Election Board issues regulations relating thereto. As explained below, in the 2021 legislation creating the Suspension Rules, the Georgia General Assembly directed the State Election Board to promulgate rules and regulations governing the suspension process. O.C.G.A § 21-2-33.2(b). It is undisputed that the State Election Board has not done so. In their Brief, Defendants suggest that the lack of any governing regulations renders the threat that Plaintiffs will be injured by the Suspension Rules too remote. Defendants do not, however, state candidly or clearly whether the State Election Board has the power to enforce the Suspension Rules or intends to do so before the mandated rules are promulgated. This question could be answered by Defendants in a sur-reply. If it is not, oral argument would give the State Election Board the opportunity to explain to the Court its interpretation of the law and its intentions relating to enforcement. If Defendants state, in a sur-reply or at oral argument, that the State Election Board has no intention, or authority, to enforce the Suspension Rules unless and until it promulgates the regulations, with the Court's permission, Plaintiffs will withdraw their appeal of the District Court's decision on the Suspension Rules.

## II. Reply

### A. Plaintiffs Having Standing to Challenge the Suspension Rules

As Plaintiffs explained in their Opening Brief, as to the Suspension Rules, the District Court's holding that Plaintiffs "are unable to demonstrate that the threat of injury is both real and immediate, not conjectural or hypothetical," (Doc. 162 at 18), is in error because the District Court focuses on the number of events that must occur *after* the procedures for the enforcement of the Suspension Rules are initiated. The correct analysis is whether the Plaintiffs have a "credible fear" that the challenged provisions will be enforced, not whether the enforcement will ultimately lead to decisive punishment or other regulatory action. *Susan V. Anthony List v. Driehaus,* 573 U.S. 149 (2014). Under the factors set forth in *Driehaus* and other decisions, there exists a credible threat of enforcement, particularly since Defendants have never disavowed their intent to enforce the Suspension Rules

In their response, Defendants contend, in effect, that the District Court correctly focused on the likelihood that, after suspension proceedings were initiated, a plaintiff would actually be denied due process and suspended. Defendants argue that the *initiation* of suspension proceedings does not count as an actual injury under Article III because, on the merits, Defendants

3

challenge the lack of due process *after* suspension proceedings are initiated. (App. Doc. 27 at 50, Br. at 38).[1] This argument is wrong on the law. The Board Member Plaintiffs will suffer actual, concrete injury upon *the initiation* of suspension proceedings. Like the plaintiffs in *Driehaus,* Board Member Plaintiffs "may be forced to divert significant time and resources to hire legal counsel and respond to discovery requests." 573 U.S. at 165. The threat of this injury, easily sufficient to constitute "actual injury" for purposes of standing, is not dependent upon the number of steps that the SEB must take before a board member is actually suspended. Those procedures are highly relevant to Plaintiffs claims on the merits – particularly their procedural due process challenge (Count One) – but, as a matter of law, are unrelated to the standing inquiry. "We've stressed repeatedly that 'standing in no way depends on the merits of the plaintiff's' claims." *Polelle v. Fla. Sec'y of State,* 131 F.4th 1201, 1221 (11th Cir. 2025).

The rest of Defendants' response is built upon an incorrect reading of the Suspension Rule. Defendants state that SB 202 allows the SEB to suspend "a local election official" – note the singular "official" – who has violated

---

[1] Plaintiffs used the designation "App. Doc." to refer to the docketing number assigned by the Court of Appeals. "Doc." refers to the docketing number assigned by the District Court. Textual references to the Appellees' Brief are to the page numbers at the bottom of the page on Appellees' Brief and are also cross-referenced to the page number (in blue at the top of the page) assigned by the Court of Appeals' docketing system.

election laws.  (Br. at 6; App. Doc. 27 at 18).  This is dead wrong.  Under SB 202, the SEB's authority is to suspend "a county or municipal superintendent," O.C.G.A. § 21-2-33.2, and the law defines "superintendent" as "the county board of elections."  O.C.G.A. § 21-2-2 (35).  SB 202 also refers to proceedings against a "local election official."  But the term "local election official" also is defined as the entire board of elections or board of elections and registration, not an individual board member. O.C.G.A. § 21-2-105.

Defendants' misreading of the plain language of the statutes undermines their entire analysis of the law.   The purpose of SB 202 is not to discipline particular individual board members who have violated election laws, but to have the SEB replace an entire county board of elections – a board appointed to serve in that capacity by the local community leaders – based on the violation by *one* of the board members or even a staff member, of various election laws.

As to standing, this makes all the difference.  While it is true that Plaintiffs have no intention of violating any election rule (one factor in considering a pre-enforcement challenge), they can be removed from office, along with their entire board, even if they do not violate any law; indeed, they can be removed even if they oppose or attempt to remedy election law violations by other board members or staff.

This mistaken reading of the plain language of the statute continues throughout Defendants' Brief.  On page 7, Defendants state: the "procedures for initiating an investigation and ultimately suspending a local official are extensive."  (App. Doc. 27 at 19).  To the contrary: the procedures apply only to the "superintendent" or "local election official" which, as discussed above, is the entire board.   On page 8 (App. Doc. 27 at 20), Defendants, citing O.C.G.A. § 21-2-33.2(f), go on to describe how a suspended official may be reinstated and that the "suspended official [singular] 'shall be given at least 30 days' notice prior to such hearing,'" citing O.C.G.A. § 21-2-33.2(f).  Again, the implication that a single individual can be isolated as the target for removal is inconsistent with the relevant statutory definitions of "superintendent" and "local election official."  The Defendant's discussion of notice also  is incorrect. O.C.G.A. § 21-2-33.2(f) does *not* give a suspended official *any rights*.  Instead, the right to petition for reinstatement, and notice, is only given to the suspended "superintendent,"  which, again, is the entire board:  "Upon petition for reinstatement by a superintendent suspended pursuant to a finding under paragraph (1) of subsection (c) of this Code section, the State Election Board shall conduct a hearing . . . .").  *Id.* Defendants state further that an adverse decision is subject to judicial review under the Georgia Administrative Procedure Act, but do not explain how an individual board member can as a legal or practical matter obtain judicial

review when he or she, as an individual, is not a party to the underlying proceedings. Thus, under the plain language of the law, an individual board member may be suspended (with their entire county board of elections) even though the individual board member did nothing wrong; the individual board member has no right to a hearing, no right to notice, no right to be reinstated, and no opportunity to obtain judicial review.

Defendants state on page 25: "At most, the Suspension Rules establishes *potential* consequences for election officials who violate election laws without remedying the violations or who severely mismanage elections." (App. Doc. 27 at 37) (Emphasis in original). No: the Suspension Rules establish harsh consequences for election officials who do *not* violate election laws but are removed from office because of actions of other board members or staff. And the notion that removal is limited to those who "severely mismanage elections" is – to steal Defendants' colorful description (Br. at 1) – a "hallucination." For example, three violations of the following rules could trigger suspension of the entire board:

> *failure to print an individual badge for each poll watcher, Rule 183-1-13-.04;
>
> *failure to swear in voting system programmers. Rule 183-1-12-.17;
>
> * failure to conduct an hourly sweep of each voting station to find any unauthorized materials left behind. Rule 183-1-12-.11(3));

7

> *allowing equipment storage room exceeded 80% humidity on rainy day. Rule 183-1-12-.04(2).

*See Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1259 (11th Cir. 2012) (credibility of threat increased because defendants confirmed "that any minor traffic violation such as failure to use a turn signal or failure to come to a complete stop can provide the requisite probable cause to trigger application" of challenged law).

On page 37, Defendants, in their long discussion trying to shoehorn the facts of this case into the holding of *O'Shea v. Littleton,* 414 U.S. 488 (1974), state: "Plaintiffs are challenging procedures that can come up only after they initially engage in some misconduct." (App. Doc. 27 at 49). In fact, Plaintiffs are challenging procedures that can come up after *someone else* allegedly engages in wrongful conduct.

Defendants argue that, under *Driehous,* a plaintiff making a pre-enforcement challenge to an allegedly unconstitutional law must allege an intent to engage in activity that potentially violates the law. That rule makes sense if the enforcement of the law against the plaintiff is dependent upon the plaintiff violating the law. If the plaintiff is not going to violate the law, this reasoning goes, the law will not be enforced against them. But where, as here, the law may be enforced against the plaintiff without the plaintiff violating any law, that logic falls apart entirely. Since the plaintiff's

intent to violate the laws triggering suspension has absolutely nothing to do with the likelihood of the enforcement of the Suspension Rules, or the imminence of actual Article III injury, that factor should have no bearing on the standing analysis.

Finally, in their discussion of the Suspension Rules, Defendants do make a correct and important statement: "The Board is directed [by SB 202] to 'promulgate rules and regulations for conducting such preliminary investigation and preliminary hearing,' *id.,* but has not yet published those rules, Doc. 157 at 6." (Br. at 7-8; App. Doc. 27 at 19-20). This is a telling admission. In SB 202, the General Assembly commanded Defendant State Board of Education "to promulgate rules." O.C.G.A § 21-2-33.2(b). The State Election Board, represented by the Attorney General, is admitting to this Court that is has, for almost five years, ignored or at best not obeyed the General Assembly's explicit command.

Worse, Defendants attempt to use the State Election Board's failure to obey the General Assembly's command to defeat Plaintiffs' standing. In what it intended as the coup de grace of its standing argument, Defendants state:

> And on top of everything else, the General Assembly has tasked the Board with promulgating 'rules and regulations for conducting such preliminary investigation and preliminary hearing.' O.C.G.A § 21-2-33.2(b). Those rules have not been

issued yet, which affirms that whatever process Plaintiffs want to challenge as inadequate has not even been fully established.

(Br. at 27-28; App. Doc. 27 at 39-40). To make any sense, what Defendants mean by this statement is that the Suspension Rules will not be enforced unless and until Defendant State Election Board promulgates the rules and regulations for conducting preliminary investigations and preliminary hearings.

Defendants' careful choice of words, however, falls short of committing to not enforcing the Suspension Rules unless and until the State Election Board promulgates the required regulations. Defendants also have never denied that "any alleged violation of SB 202 will be 'vigorously' prosecuted," as the District Court found in its Order on Motions to Dismiss. (Doc. No. 78 at 9).

Defendants should be candid with the Court, the Plaintiffs, and with Georgia citizens. Will Appellee State Board of Education state, on the record, that it does not intend to enforce the Suspension Rules unless and until it promulgates the regulations relating thereto as required by the General Assembly? If Defendants do not do so in a sur-reply, Plaintiffs urge the Court to schedule oral argument in this case so that the Attorney General, who here represents the State Election Board, can have the opportunity to answer this

question squarely.  The State Election Board has no good reason to not answer this question.

If the State Election Board does not have the resources to comply with the General Assembly's command that it promulgate the rules, the least the State Election Board can do is stand up and state, clearly, its intentions.  If the answer is "no, the Suspension Rules will not be enforced unless and until the regulations are promulgated," or something to that effect, Plaintiffs will, with the Court's permission, withdraw its appeal of the District Court's decision on the Suspension Rules.

**B.     Plaintiffs Have Standing to Challenge the Observation, Communications, Tally, and Photography Rules**

*1.     Plaintiffs' Injuries are Traceable and Redressable*

As to Counts Four through Eleven, challenging the Observation, Communications, Tally, and Photography Rules, the District Court held that Appellants lacked standing because their injuries were not traceable to the actions of the Defendants or redressable by an injunction against them.   In their Opening Brief, Plaintiffs showed that the District Court erred by holding that an injunction against the named defendants would not redress Plaintiffs' injuries because nonparties, specifically 159 state county attorney generals, could still criminally prosecute Plaintiffs for violation of the Election Laws.  This holding is wrong as a matter of law.   15 MOORE'S

FEDERAL PRACTICE – CIVIL § 101.42 (2025) (injunction against one of several governmental authorities with enforcement power sufficient to establish redressability);

In their response, Defendants make no effort to defend the District Court's holding.  Indeed, Defendants do not even cite, much less attempt to distinguish, the most recent and authoritative United States Supreme Court case on this issue, *Whole Woman's Health v. Jackson,* 595 U.S. 30 (2021), discussed at length in Plaintiff's Opening Brief.  (App. Doc. 21 at 33-35).  In *Whole Woman's Health,* a Texas law, S.B. 8, prohibited abortions after eight weeks but, presumably to evade federal constitutional attack, specifically allowed only private parties to enforce the law in civil suits.  The plaintiffs, however, only sued one private party and he declared that he had no intention of enforcing the law.  The Supreme Court held that the plaintiffs had standing to sue licensing-official defendants because "provisions of state law . . . appear to impose a duty on the licensing-official defendants to bring disciplinary actions against them if they violate S. B. 8."  595 U.S. at 47-48. The fact that SB 8's primary enforcement mechanism was suits by private parties, and no private parties remained in the case, had no bearing upon whether the plaintiffs had standing to sue the licensing-official defendants. If Defendants had any way of distinguishing *Whole Woman's Health,* they would have done so somewhere in their sixty-page brief.

*Whole Woman's Health* confirms that whether the alleged unconstitutional law may also be enforced by nonparties has absolutely nothing to with whether the plaintiff has standing to sue defendants who do have enforcement authority. Standing requires a justiciable controversy *between the parties* such that the lawsuit presents a case or controversy under Article III. If there is such a controversy, the federal court has jurisdiction regardless of whether the plaintiff *might also* have a justiciable controversy against a nonparty.

And, even if the Supreme Court had not so ruled, the law on this point was already well established. 15 MOORE'S FEDERAL PRACTICE – CIVIL § 101.42 (2025) (injunction against one of several governmental authorities with enforcement power sufficient to establish redressability); *Matsumoto v. Labrador,* 122 F.4th 787, 801-02 (9th Cir. 2024) (same). As the Supreme Court stated in *Larson* v. *Valente*, 456 U.S. 228, 244, n. 15 (1982): "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *See also Trump v. Wis. Elections Comm'n,* 983 F.3d 919, 924-25 (7th Cir. 2020) ("the fact that a judicial order cannot provide the full extent or exact type of relief a plaintiff might desire does not render the entire case nonjusticiable").

Rather than attempting to defend the District Court's holding, Defendants argue that Plaintiffs never sought to enjoin the *civil* enforcement of SB 202 by the Defendants, only the *criminal* enforcement by unnamed county prosecutors. Defendants do not explain how this relates to traceability or redressability. But, in any event, Defendants' description of Plaintiff's claim is incorrect. Plaintiffs' original complaint was against the SEB (the Governor would be added later) and Plaintiffs' prayer for relief makes no distinction between civil and criminal enforcement. The relief that Plaintiffs seek in their Complaint is a declaration that the challenged laws are unconstitutional and a "preliminary and permanent injunction prohibiting Defendants SEB Members from enforcing the challenged provisions of SB202." (Doc. 1 at 157). Stopping Appellee from the civil enforcement of SB 202 has been a goal of this litigation from the start. Four years ago, the District Court observed, referring to Appellee SEB: "State Defendants' concede that they have 'authority with respect to civil enforcement proceedings regarding the Observation, Communication, Photography, and Tally Rules." *Coalition for Good Governance v. Kemp,* 558 F. Supp. 1370, 1382 n. 5. (N.D. Ga. 2021).

The injury of the SEB enforcing the challenged provisions is plainly traceable to the SEB and will be redressed by an order enjoining the SEB from doing so. The District Court's holding to the contrary must be reversed.

14

### 2. *Plaintiffs' Injuries Not Speculative*

Implicitly conceding the weakness of the District Court's holding on traceability and redressability, Defendants lead their standing argument on the Election Rules with a different argument: that Plaintiffs' standing injuries are too speculative to confer standing, an issue that the District Court did not reach in the order on appeal. Without doubt, this Court has the authority to affirm the District Court for any reason supported by the record. *PDVSA US Litig. Tr. v. LukOil Pan Americas LLC,* 65 F.4th 556, 562 (11th Cir. 2023). In this case, however, the record does not support affirming the District Court on this ground.

For starters, the District Court itself has already rejected Defendants' argument that Plaintiffs' injuries relating to the Election Rules are too speculative to confer standing. As Plaintiffs reported in their Opening Brief, at 8 to 11, on August 20, 2021, after a hearing, the District Court issued a comprehensive decision denying in part and granting in part Plaintiffs' Motion for Preliminary Injunction. *Coalition for Good Governance v. Kemp,* 558 F. Supp. 3d 1370 (N.D. Ga. 2021). The District Court addressed at length Plaintiffs standing as to the Election Rules. The Court first rejected Defendants argument – made again here - that Plaintiffs lacked an Article III "actual injury" because the Election Rules had not yet been enforced against them. Instead, the Court ruled, "courts allow a plaintiff to bring a pre-

enforcement suit 'when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there is a credible fear of prosecution.'" 558 F. Supp. 3d at 1379 (quoting *Wollschlaeger v. Governor,* 848 F.3d 1293, 1304 (11th Cir. 2017)). The Court found that Plaintiffs met this test by presenting evidence that SB 202 was already changing their conduct because of "self-censorship" and "forgoing participation in the election process."

> As such, the alleged injury—self-censorship or forgoing participation in the election process—may have already occurred for those plaintiffs who indicated that they would change their behavior with respect to the July 13, 2021 runoff elections.

558 F.Supp. 3d at 1379.  As to their "credible fear of prosecution," the District Court found:

> With respect to the threat of prosecution under the challenged provisions, Plaintiffs submitted evidence of pending complaints against poll watchers for election monitoring activities that allegedly violated an election statute not at issue here. Marks Decl. ¶ 11, ECF No. 15-3. Notably, State Defendants did not refute—either in their papers or during oral argument— Plaintiffs' contention that any alleged violations of SB 202 will be "vigorously" prosecuted. Pls.' Reply Br. 5, ECF No. 23. Therefore, Plaintiffs have demonstrated a credible threat of prosecution.

*Id.,* 558 F. Supp. 3d at 1380.  The District Court also rejected the Defendants' argument, made again here, that Plaintiffs' injuries were too speculative under *Clapper v. Amnesty International USA,* 568 U.S. 398 (2013), stating: "Unlike here, the plaintiffs in *Clapper* lacked knowledge of the government's

enforcement practices and failed to provide a credible basis for fear of prosecution." 558 F. Supp. at 1380.

On the merits, the District Court denied Plaintiffs' Motion as to the Observation, Communications, and Tally Rules, but granted Plaintiffs' Motion as to the "Photography Rule 2", the label the District Court gave to the section of the Photography Rule that prohibited "any photography or recording of any voted ballot in public and nonpublic forums alike." The District Court ruled that Plaintiffs were substantially likely to succeed on the merits of their claim that Photography Rule 2, a content-based regulation of protected speech, was not narrowly tailored to meet any compelling state interest. 558 F.Supp.3d at 1386. The District Court accordingly enjoined the Defendants from enforcing Photography Rule 2. 558 F.Supp.3d at 1386.

Defendants never appealed this decision, either on the issue of standing or as to the merits on the preliminary injunction of the enforcement of Photography Rule 2.

In this appeal, Defendants in effect ask this Court *to affirm* the District Court's decision in the Order on appeal by *reversing* its Order on Plaintiffs' Motion for Preliminary Injunction. This Court should decline this invitation for multiple reasons. First, in its Opinion, the District Court relied on the copious evidence that Plaintiffs presented supporting the factual basis for their standing to challenge the Election Laws. Though this Court has the

power to itself review the affidavits, depositions, and documents that the District Court reviewed in making its decision, Defendants in this appeal do not even discuss the District Court Order, much less identify errors in its factual findings. For example, the District Court found, as a matter of fact, that Plaintiffs' fear of prosecution was "credible." On what basis is this Court to reverse that factual finding? Defendants do not say. The District Court found, as a matter of fact, that the alleged Article III injury – "self-censorship of foregoing participation in the electoral process – may have already occurred." 558 F. Supp.3d at 1379. Even if the District Court is not entitled to any deference, how is this finding in error? Defendants do not say. If this Court does undertake such a search for evidence contradicting the District Court's findings, it will come up empty. And, in any event, to again steal from the Defendants' brief: "appellate judges are not like pigs, hunting for truffles buried" in the record. *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (quotation omitted).

Second, the fact that standing is at issue does not automatically change all the rules of appellate procedure. For underlying evidentiary matters related to standing, "Clear error exists if after reviewing the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Brown*, 996 F.3d 1171, 1182 (11th Cir. 2021) (citations omitted). Since they are seeking a reversal of the District Court's

18

decision on this issue, Defendants have the burden of making this showing and have not come close to doing so.

Third, if this Court were to reconsider the District Court's factual findings, it would have to apply a *lower standard of evidence* than applied by the District Court itself. The order on appeal is the granting of defendant's summary judgment. By prevailing on the issue of standing in connection with their motion for preliminary injunction, Plaintiffs far surpassed the showing necessary to defeat summary judgment. *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000) ("the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

Instead of hunting for truffles, this Court should address the issues ruled upon by the District Court and thoroughly argued in the appellate briefs. As to the Election Rules, the District Court's holding that Plaintiffs' claims are not redressable against the named defendants because Plaintiffs did not join as defendants all the state officials capable of enforcing the laws against them was wrong as a matter of law and should be reversed.

For the foregoing reasons, the District Court's Order granting Appellees' Motion for Summary Judgment on the Suspension Rules, and on the Election Rules as to Defendant SEB, should be reversed.

19

Respectfully submitted this 31st day of October, 2025.

/s/ Bruce P. Brown
Bruce P. Brown
*Counsel for Appellants*
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Road NE
Atlanta, GA 30306
Phone: (404) 386-6856
bbrown@brucepbrownlaw.com

<u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing Brief for Appellant complies with the type-volume limitation specified in the Federal Rules of Appellate Procedure, in the following respects:

(a)     Exclusive of the exempted portions of the Brief, as provided in Federal Rule of Appellate Procedure 32(f), the Motion contains less than 4,250 words.

(b)     The Brief has been prepared in proportionally spaced typeface, using Microsoft Word in 13-point Century Schoolbook font.

(c)     As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C)(i), the undersigned has relied upon the word count feature of his word processing system in the preparation of this Certificate of Compliance.

This 31st day of October, 2025.

*/s/Bruce P. Brown*
Bruce P. Brown
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 386-6856

# CERTIFICATE OF SERVICE

I hereby certify that I have, this date, filed electronically the foregoing

Brief of Appellant with the Clerk of this Court, and have served it upon

counsel by filing it with the court's electronic-filing system.

This 31st day of October, 2025

*/s/Bruce P. Brown*
Bruce P. Brown
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 386-6856